Francisco. I would like to reserve five minutes for rebuttal. Mr. Lopez was convicted of being found in the U.S. after having been officially deported and removed. The element of deportation has two aspects. The government must prove that the defendant was ordered deported and the government must prove that the defendant had been physically removed. Mr. Lopez proceeded to trial on the theory that the government would not be able to prove that he had been physically removed, but when the government wholly failed to introduce any evidence of the order of deportation, he moved for a judgment of acquittal. On appeal, Mr. Lopez makes three claims related to this element. The first is that this court should vacate his conviction and dismiss this case because there was a complete and total failure of proof of an essential element of the offense. The second is that even if this court found that the trial was errorless, this court should nevertheless remand for a hearing on the motion for a new trial. I'd like to start with the sufficiency issue because if resolved in Mr. Lopez's favor, this court need not reach any of the other issues. One of the elements of 1326A1   is a prior removal order. Well, is that what the statute says? I'm looking at 1326A1, and it says an alien who has been, and it says deported or removed, or has been removed, has departed. And as I understand it, the government was relying on this I-296, which is captioned, Notice to Alien Ordered Removed Departure Verification. That's correct. So why is that not sufficient to show that he was removed? Removal has two aspects to it. One is that he be ordered removed, and one that he be physically removed. If properly admitted, the I-296 was evidence that he was physically removed, but not evidence that there was an order of removal. The document that the court Where in the statute does it require an order of removal? 1326A1 calls it removal. But this court has already held that removal includes two aspects. In Arias-Ordonez, the government took the position That's not the question. I think the question, I'm wrestling with the same issue Judge Wardlaw asked you about. Walk us through the statute and tell us why we shouldn't read the statute in the way that Congress wrote the word. Well, first, this court is not writing on a blank slate. This court has previously held that an order is required. Just walk us through the language of the statute, and then we'll talk about the Ninth Circuit. I know you want to go to the Ninth Circuit cases, but I just want to start with what the statute says. 1326A1 requires a departure, a removal, exclusion, et cetera, pursuant to an order. And the reason we know it's pursuant to an order is if we turn to 8 U.S.C. 1326D, it specifically sets forth a requirement for a challenge to an order. And when it tells us what orders it's referring to, it says the validity of the deportation order described in subsection A1 of this section or subsection B of this section. Now, if we read this provision to say that there is no requirement that there be an order, then 1326D would have no application to the Ninth Circuit, and it would have no application to the Ninth Circuit. So it's 99% of 1326 prosecutions. Is that true? I mean, why can't an alien who has been ordered removed in an expedited proceeding raise one of the challenges listed in D? I agree with you. I'm not arguing that an expedited proceeding cannot serve as the basis for a challenge. But why can't a subsequent 1326 prosecution collaterally attack the prior expedited removal? Can he not? Absolutely. That's not my argument. Then maybe I'm missing the point. But let's go back to my question and Judge Wardlaw's question. Walk us through the elements beginning in 1326A1 and explain to us why there is a requirement that one of the elements that the jury finds be an order of removal. Okay. So the requirements are that he has to have been denied admission, excluded, deported, or removed, or has departed the U.S. while an order of exclusion, deportation, or removal is outstanding. In this particular case, they proceeded on the theories of deported or removed. There are two ways to reach the result, which needs to be reached, because this Court has already held it. First is to read, while an order of exclusion, deportation, or removal as outstanding, as modifying the order of removal. And a district court in this district has so held. The second is to understand that the word removal contains within it the requirement of an order. The reason why the last clause contains, while an order of exclusion, deportation, or removal is outstanding, is because otherwise 1326 would cover anyone who departed the United States. And we know that's not true. If you were deported or removed, could you not? Right. And that is why it's required. So you can't be prosecuted for 1326 for simply voluntarily walking across the border. Exactly. And that is why in this last clause, the language, while an order of exclusion, deportation, or removal is outstanding, is required. But that doesn't mean that denied admission, excluded, deported, or removed doesn't contain that requirement of an order. So what this means, if I could direct you again, because you have to read the statute as a whole, the 1326D. 1326D says you cannot collaterally attack the order, which is set forth in A1, unless the following requirements are met. So it specifically refers back to A1 and says that we are talking about those orders. If the only order that was required would be the order that is referenced in the last clause, then 1326D would have no application. In cases where someone was actually removed. So is your position, then, that our Ninth Circuit jury instruction committee is wrong as a matter of law in the circuit jury instruction on this case? I don't think it's wrong. But, you know, the Ninth Circuit jury instructions are, in fact, not infrequently wrong. But are you challenging, because you are challenging it? Well, it says that a requirement is a removal. It doesn't say that the removal need not be pursuant to an order. And, you know, I've been, I was a federal public defender for 14 years in this jurisdiction, and I have never seen a case where the government not only failed to show an order, but took the position that one was not required. It is routinely admitted in every case. It's easy to prove. But simply because it's easy to prove doesn't mean that the government gets a pass. Can you explain, before we get there, why removed, you said there's two ways of getting there, one reading the statute as a whole, the other is just the word removed or the meaning of the concept removed includes an order of removal. Yes, and this Court has already held that in United States v. Arias-Ordonez. Arias-Ordonez, okay. In Arias-Ordonez, the government took the position that the word removal in 1326A1 requires only a physical removal. That was a case in which the defendant was ordered removed in absentia, and then came back, and then expedited removal, and then came back, and then, et cetera. And the government took the position that even though the order of removal in absentia violated the defendant's due process, they could still prosecute him under 1326A1 because 1326A1 requires only a removal and not a removal order. And this Court vigorously rejected that proposition. This Court held that while a sentence enhancement under 1326B might require only a removal, a conviction under 1326A1 requires only a removal. And that's at Arias-Ordonez at page 982. And that wasn't anything new. This Court has repeatedly held that a prior removal order is required. In Vidal-Mendoza, this Court cited 1326A1 as a source of that proposition. So I guess your argument is somewhat akin to a federal bank robbery where the certificate of insurance is required as a source of that proposition. Is that an element or as proof of the insured status of the institution? Absolutely. In United States v. Smith, the parties had actually stipulated that the bank involved was an FDIC-insured bank, but that stipulation was not read to the jury, and this Court held that it could not fill in the evidentiary gap. The jury could not have concluded that the bank, even though it was like Wells Fargo, it was a very big bank and it was like national, et cetera, the jury could not have concluded that it was an FDIC-insured bank. It was FDIC-insured because the stipulation was not read to the jury. So going back to Exhibit 12, why couldn't the jury look at the title of the form and the language of that exhibit? You have been found to be inadmissible, et cetera, and conclude that he was being removed because he was ordered removed. Well, let's start with the title of the form. The title is Notice to Alien Ordered Remove, but what we know is that captions on forms are not evidence of anything. This Court has repeatedly held that INS forms or ICE forms or immigration forms are replete with error. In this case, not only did no one at trial discuss this form as having anything to do with an order of removal, they in fact said the opposite. When Agent Oakey testified, he described this as a form that's used on the border. It's used by Border Patrol. And when Agent Harris testified, he said that this is a form that verifies that an alien has been physically removed. Nobody ‑‑ Isn't that what it does? Yes, absolutely. Okay. It verifies that an alien has been physically removed. But nobody said pursuant to an order of removal. Well, I guess the question I'm asking is why can't ‑‑ you're challenging sufficiency of the evidence, and I'm asking why isn't the form itself, coupled with the testimony that he was removed, sufficient to permit the jury to infer that it was done pursuant to an order of removal? For the same reason that when a ‑‑ in Zepeda, when the detective said that in order for me to investigate a crime on Indian country, I would have to have a form. It has to be federal jurisdiction, and that's why I went to the community center and got this document that showed that this, the defendant was an Indian, was not sufficient evidence to show that he was, in fact, an Indian as described by the statute. I thought, didn't we withdraw Zepeda? I know there was some ‑‑ Yes, and it was reissued on September 19th. Reissued. Okay. But that portion of Zepeda is still ‑‑ Yes. Okay. And I filed a 28J letter with respect to that. Okay. Because that was the issue with regard to whether or not the district court made the determination as to whether the defendant was in Indian country or not. It was actually whether or not the jury could have found that the defendant was bloodline derived from a federally recognized Indian tribe. And in that particular case, the Ninth Circuit, in its amended opinion, said that, yes, the court could take judicial notice that this particular tribe was ‑‑ Was federally registered. But the court could not take judicial notice that the defendant himself was blood derived from that ‑‑ from that registered tribe. So, of course, there's always a legal component, but there's also a factual component. In these cases, the order of deportation is a finding of fact. And the jury could not have concluded from this form, which nowhere indicates that he was ordered removed, that he was ordered removed. It says he was found inadmissible. Being found inadmissible is only a prerequisite to being removed. One does not inevitably become ordered removed when one is found inadmissible. One could claim asylum, one could note that they had been in the country for two years and ask for a real hearing, et cetera. And, in fact, the form itself makes that clear, because it has certain sections that talk about being found inadmissible, and it has other sections that talk about having been ordered deported. And the box that's checked in this case is the one that has to do with having been found inadmissible. More importantly, the government's witnesses who talked about this form never talked about it as a form that had anything to do with an order of deportation. It was always the who, what, when was he physically removed. This is a form we use to show that the alien was physically removed. But perhaps as judges you would draw the conclusion that he had been ordered removed. But if you were on the jury, you would have been told that you cannot draw from your judicial experience to surmise. It has to be based on the evidence. And in this case there was no evidence whatsoever that he was ordered removed. Well, there is some evidence, but your argument is it's not sufficient. It's not sufficient for a jury to conclude beyond a reasonable doubt. And even if it were, which I do not believe it was, this jury was not even instructed it needed to find that. I'd like to reserve my four seconds. Good morning, Your Honors. May it please the Court. Ashley Aul for the United States. The government is not required to prove an order to the jury in order to succeed in a case under 1326. Well, what about Aris Adonis? I think Aris Adonis, which I believe is a 1326D case, as well as the other three, are cases under 1326D. Fundamentally, those all deal with something that does not have to be proved to a jury. As this Court has held repeatedly, the validity of a deportation is not a question for the jury. And so I read those cases actually very differently. I read them first to be discussing something that fundamentally does not need to be proven to the jury, which is the validity of a deportation. And I actually think that brings some focus on the narrowness of what we're arguing about here, as was demonstrated just now to me, and I knew before. There is an order in this case, of course, and it was litigated pretrial. The validity of that order... Why wasn't it introduced? As a matter of fact, Your Honor, I did speak to Mr. Left, who was the Sousa who tried this case, and he didn't introduce it because he didn't believe he had to under the law. It was as simple as that. Oh, yeah. So he just put everybody to a lot of work. We in particular, Your Honor. You're making fun of it, huh? Unfortunately, he's left the office. Do you know of any other case that was handled that way? I don't believe so, Your Honor. No, no. This is unique, right? I don't. I couldn't say it's unique. But it's close to being unique. In my experience, it is unique, Your Honor. In your experience, it's unique. Yes. But I think the fact... And that would have been the proper way to handle it. I don't know that it would have been the proper way. It wouldn't have been improper to put in an order. So you're not the lawyer who tried it? The lawyer who tried it, Mr. Left, was a special assistant United States attorney on loan to us from the INS. And the INS, pardon me, from ICE. And ICE, his term with us ended. And so he's gone back to being an attorney. So Mr. Left has left. Unfortunately. And much, much to our great sadness, he is back at ICE for the time being and furloughed just to make it worse. Well, we get very few... attorneys that actually try these cases. In this particular case, Your Honor, it was due to circumstances completely beyond my office's control. In any case, I think the fact that there is an order in this case is relevant. That's to say there was an order, its validity was determined by the court. Then it should have been put in front of the jury. I think there is no requirement that it be put in front of the jury. Speaking first to sort of what the elements are, I think 1326A does not support defendant's argument. I think 1326A, in fact, sort of fights against the interpretation that the defendant put forth in front of the district court for two, at least two reasons. One, because it would read out, in fact, it would read out deportation or removed out of the statute because, of course, anyone who has departed the United States, anyone who has been deported or removed has departed the United States while an order of deportation or removal is outstanding. So it would make the terms deportation and removal superfluous. Second... I was thinking... I'm looking at this statute. There's another way to look at it, though. If I can find it again. So for departing, you can leave, as Judge Talman said, without an order, and only if you departed with an order would you then trigger that section. And that's why that clause modifies that. Whereas being denied admission or exclusion or deported or removed inherently requires an order. And I think that's the argument that defendant has shifted to on appeal. That argument was not made. But it does. It does actually, right? I mean, those forms of action do require an order by someone. I think they, as a matter of fact, I think they do. In terms of the elements that need to be proved to the jury, it is not the government's position that we could put forth evidence of someone being kidnapped and thrown across the border and that would be a deportation. And I think not for two reasons. One is to be thrown across the border by hoodlums. And two, that's not the definition this Court has previously adopted in Romo-Romo, which I think is the closest on-point case where the Court actually grappled in a trial setting and in a sufficiency challenge to what the definition of a deportation is. Can I ask you a related question? Yes. In expedited proceedings, an order is required. Is that correct? If I understand Your Honor's question correctly, an order does come out of expedited proceedings. Even though it's an expedited proceeding, an order is part of that proceeding. Yes. That is the order that appears in the docket at both 28-2 at page 14 and the version that was just handed to us before, which is at document 35-1 at page 37. But that one wasn't admitted in this case. It was not admitted in this case. Do you know whether it was signed on the back by the alien as required by the regulation? Your Honor, I don't have it in front of me, and so I can't say that I have page 2 of the order, which would have been a second page. It would not be valid if it was not signed. I can't speak to whether or not it was signed on the back, Your Honor. I apologize. Would you please submit the original document for our review? Yes. Either the original or... A full copy of the original. Yeah. There you go. Absolutely. I think moving to the sufficiency aspect, assuming that some evidence of an order or some evidence, I think more generally, of the lawfulness of the deportation was required, I think there's much more here than the defendant has put forth. There is, of course, Exhibit 12, which we've discussed, which is called the Notice to Alien Order Removed. That's just a verification that somebody learned from someone in his office that he verifies that he was removed. I mean, I think that's an overly narrow view of what the document does, particularly under the Neville standard, but I don't think that document stands alone. Agent Oki... Well, you're talking about the Notice and Order of Expedited Removal? No, Your Honor. The Notice and Order of Expedited Removal is what was not put in front of the jury. I'm talking about, right now, Exhibit 12, which is the Notice to Alien Order Removed. And in addition to Exhibit 12, Agent Oki testified that the defendant was expeditedly removed. So this document here, that I have in my hand, called Notice of Order of Expedited Removal, Form I-860, was never before the jury. That's right, Your Honor. It was not. But Agent Oki did testify that the defendant was expeditedly removed. Was it ever put in evidence? Pardon me? Was it ever put in evidence? It was presented to the district court pre-trial in the context of a 1326D challenge, but it was not put in evidence or shown to the jury. But it would have been a lot better if you'd had it put in front of the jury. My life, personally, would have been easier had it been in front of the jury. But just to go through, I think, what else is in the record. You know, everybody talks too fast. I'm sorry. Me in particular, Your Honor. No, no. That's just the way our culture is. You've got to talk real fast so you don't like it every minute and second. And that's very important. We have to do that. So this was not put in evidence. That's right, Your Honor. And that is in the end. But in other cases, the order of removal has been put. This is the only case where the order of removal was not put in evidence. I don't know that I could say it's the only case. Well, but in your. In my experience, Your Honor, it is common to put the order of removal into evidence, yes. Many years of handling these cases. Anyway, whatever it is. So as far as we know in the past, that order of removal has been put in evidence. The jury is aware of it. Probably it was read to the jury. Maybe it went in as part of the exhibits. I don't. I can't say the amount of detail that they're typically put in front of the jury. Here the jury was presented with evidence that there was an order, however. To go to Judge Hall's question. What is the point of putting it in evidence? What if the jury says we want to see the exhibits? Don't we routinely send the exhibits into the jury room? That's doubtlessly right. And in this case, that may have been done. And in those exhibits and in the testimony, there was evidence of an order. I think what we're getting close to discussing here is a best evidence rule. And I think that's not. No, no, I'm getting close to doing it right. I want to see you do it right. I'm pro-law enforcement. I want to see your office and all the other offices do it right, set an example. I completely agree. That's what I want, high quality. We do our best. And in this particular case, even assuming that the best evidence might have been the order, there was other evidence. I care about that other evidence. The other evidence was testimony. Does the best evidence rule apply? This was not argued, but in my personal opinion, having researched it a little bit, I don't think it would. It's not the best evidence rule. I think this is really sloppy. If you put that on the bar exam, you wouldn't pass. So what is the evidence that he was removed? The evidence that he was removed, Agent Oki at ER 116 to 117 testified the defendant was expeditedly removed. Agent Harris also testified the defendant was expeditedly removed. Now, was Agent Harris there? Agent Harris, in fact, is the person who signed this order that was not in evidence. Right, but did he see him being physically removed? Agent Harris did not see him be physically removed. Agent, he was in Tucson, wasn't he? He was in Tucson. And Tucson's about 80 miles away from, from what, Juarez? From Nogales, Your Honor. Nogales, I think Juarez is on the other side. So he's 80 miles away. And who's Nokia? Oki. Oki is the case agent. He is the custodian of the A file. He does not have any direct knowledge. So he had this order. Yes, he had this order. Okay, so now I think you're in trouble because you had him testify that he was removed, but he had the benefit of this order, which the jury didn't have. I don't think you're, again, I think that gets to a sort of best evidence objection to whatever was put in front of the jury, which has not been raised. Oki did testify the defendant was expeditedly removed, as did Agent Harris, who had percipient knowledge of that fact because he's the person who expeditedly removed him. Yeah, but he, he signed that. What was the date? 210? That's right, Your Honor. And, and the removal actually took place a day later and 80 miles away. That, the other document shows it was the 11th. There's no question, Your Honor, that Agent Harris was not present at the border. Okay. Speaking right now is just regarding the order question. Agent Harris was present at the issuance of this order that is in the docket, but not in evidence. And so when he testified the defendant was expeditedly removed, he wasn't even necessarily testifying from the document. He would have had percipient knowledge of that fact. In addition, there's Exhibit 12, which we covered. And there's also Exhibit 9, which is in the government exhibits at 20, which in the bottom right, Exhibit 9 is the record of deportable admissible alien that was made when defendant was apprehended and taken to Tucson. And in the bottom right, it says disposition, colon, expedited removal, and then parentheses I-860, which is exactly the form that I'm looking at here from the docket. So why is it that I have to find out this morning that we have an order of removal in this case, and only because Judge Priorson's extern had to do additional research going through the district court files and found it attached to an opposition submitted by the government, which tells us that the government used this for one purpose, but didn't use it for the purpose it should have used it for? I mean, I don't like being, thinking about a case a certain way and then being sandbagged, a term that was used a lot in our recent Maloney case. I saw that case, Your Honor, and I'm glad today is going better for the government. It's not really. In terms of why it wasn't presented, I was not the briefing attorney either. I think the reason it was not presented was because there was no challenge to the 1320s. No, I don't think the government gets to say I wasn't the trial lawyer and I wasn't the briefing lawyer. I'm just the one who's here arguing and I don't know. I'm just going to speculate. That's not right either. I believe my speculation is fairly grounded. It's that there was no challenge. We are talking about what was in front of the jury, and there's no question that this piece of paper wasn't in front of the jury. And there was no appeal from the 1326D motion, which was the motion in connection with which both defendant and the government submitted the order. I don't believe challenging the order. He certainly wouldn't have an incentive to submit it during trial. No, no, definitely not. Okay, you were recounting for us, and I'd like to hear the rest of the answer, what evidence the jury had before it that he was ordered removed on an expedited basis.  Agent Harris's testimony, Agent Oakey's testimony, and Exhibit 9 and Exhibit 12. Is there anything else? There's nothing else to my knowledge, Your Honor. Okay. Unless the court has further questions for my remaining, pardon me, not my remaining 17 seconds. Well, this document that's dated February 10th, 2010, that doesn't really tie, that doesn't tie Lopez to Nogales, does it? No. There's not a word about Nogales, and it's signed by Craig Harris the day before, and he was not in Nogales on the 11th. He was not, Your Honor. The document that Your Honor is talking about was not relied on the government and would not be relied on the government to show physical removal. This document was generated at the Tucson processing station and is the order of removal, but not the document that purports to verify that that physically actually occurred. That document is Exhibit 12, which was in evidence and which has admittedly illegible signatures from witnesses who actually saw a defendant physically be deported. Well, was this, was this I, this I-860, that wasn't used in any way to argue that this gentleman was removed? It was not presented to the jury at all, Your Honor. I didn't say that. It was not argued by the government in any form. No, this document did not. That was evidence of removal. No, Your Honor, not this document. Not this document. Not this document, document 35-1, the notice and order of expedited removal, no. But it was part of the government's, I mean, it's in the exodus. Oh, I'm sorry, Your Honor, you may be looking at a different document than I am. I believed you were looking at the notice and order of expedited removal. Yeah. Your Honor is looking at the... No, I'm looking at the notice and order of expedited removal. If you're looking at the document, I believe you're looking at, Your Honor, it was not in the excerpts of record and it was not presented to the jury. Exhibit 12, which is in the excerpts of record, and if you're looking at Exhibit 12, it should bear the number 27 to 28 in the lower right-hand corner. That document was presented to the jury and indeed was relied on to demonstrate the defendant was physically deported. What does that document say? Exhibit 12 is the verification of removal. Oh, yeah, I've seen that. Yeah. But that was on the next day and Officer Harris was there and he said, you know, I don't know if it really counts, but the only thing that really counts is what's below that dark line, right? In terms of the verifying... Yeah, yeah. That is the verification section of the court. The rest of the stuff has no bearing. And so on 211, you've got a picture here and you've got a... You've got a signature of an officer taking the fingerprint. And... Let me check something. If I may, Your Honor... Let me just check this. Okay. Now, to be admissible, doesn't that need to be based on a matter observed? So that particular document, which is in the style that was admitted in this case, the verification of removal, is functionally equivalent to a document that this Court has repeatedly held as admissible as a public record called a warrant of removal. The warrant of removal does the same thing. The warrant of removal has a fingerprint, has a picture. Let me read this to you. This is from HCFR. The section is 235.3. And here's what it reads. After obtaining supervisory conference in accordance with paragraph B-7 of this section, the examining immigration official shall serve the alien with a form... Oh, I'm looking at the wrong thing. Well, isn't there a requirement that the person who signs this verification has a is required to observe the matter, observe the person? There was testimony in trial that that's exactly how these documents operate, this verification of removal. Agent Harris and I believe also Agent Oki testified as to the structure of these verification documents and who it is and where it is that the people see the aliens be deported before they sign. So in this case, the signature is at the bottom. Where was Agent Harris on the 11th? Harris, I believe he was in Tucson, Your Honor. He was not in Dallas. He was in Tucson. He was in Tucson, 80 miles away. And yet he's he has a signature here, 2-11 whatever that other is, 2010. I think the confusion... So he verifies that this person is removed a day later and 80 miles down the road. That's incorrect, Your Honor. Agent Harris testified as to this document, but he is not the person he testified he was not the person that signed it at the bottom in order to verify the removal. He served it on the alien, which is why his signature appears at the top of the document, but he was not the person, the officer who witnessed the removal. Who signed the who's the verifying officer? The government wasn't able to determine who it was. We don't know who that was. And so we don't know that because we don't know who the person was, we don't know what was observed, what wasn't observed. I believe the testimony at trial, Your Honor, was sufficient to provide both a foundation for this document and what those signatures indicate. That's all I can provide on that. Okay, where's that testimony? Agent. Agent. Tell me if I think I've got it here. It's Agent Harris. It's Agent Harris who testified to this particular document. Yes. At pages 149, 150. He also, as I stated, admitted he was not the person that walked defendant across the border or witnessed the departure, which he stated at 150. Well, you know, if you're going to talk fast, I'm not going to be able to follow. I apologize, Your Honor. Tell me where it is. It's Craig Harris. That's right. All right, let me find his... My learned colleague here, he has all this stuff in his computer. You got that? You want it? I've got the transcript here, Judge Ferguson, if you want to look at it. Ah, here it is, here it is. Yeah. Okay. All right. You want to point that out to me again slowly? Yes, of course. So Agent Oki testified regarding these documents in general. I will skip over that for the time being. We're talking about Agent Harris. Right. Agent Harris testified regarding this particular document.  At page ER... Enunciate. ER... Enunciate. ER 149, Your Honor. Yeah. Is where he begins talking about it. So that's where he discusses the verification of removal portion. So when Harris is being... I'm looking at the record on 000163 and the question... And you processed him in Tucson. Yes, I did. So based upon your experiences, was this individual transported from Tucson to Nogales? Yes, he was. And based upon your training and experience by looking at this document, do you believe he was actually deported from the United States? Yes, I believe he was. But Harris he's not basing his testimony on personal knowledge because he was not in Nogales. So... Isn't that right? In our belief... He was not in Nogales. That's correct, Your Honor. When the guy crossed the border, he was not... Harris was not in Nogales. No. And he wasn't qualified as an expert witness, was he? He was not qualified as an expert witness. Okay. And so why is this testimony inadmissible? So... He's just speculating. I think, Your Honor, as we've argued, first of all, there was no objection to this testimony at trial and so we're under plain error review. As we argued in the brief, there are cases that support that this would have been admissible under either 602 because personal knowledge can include a witness's experience or also under 701 as admissible lay testimony because it was rationally based on perception. Okay. All right. You know, we can make lots of arguments, but again, I come down to the fact that it was this this order of expedited removal plus this vague testimony, speculative testimony, that the government offers to prove that this person was actually removed. Your Honor, in my briefly, I think the evidence the defendant was physically removed is fairly extensive in this case. Officer Oki, who, again, was not there, did testify regarding Well, we're talking about you have to have someone has to observe the removal. That's correct, Your Honor. But the testimony was that that's what that document meant. And so when that Exhibit 12 was presented to the jury What document meant that he was observed? Exhibit 12, the verification of removal. Yeah. Where does it does that talk about We're just looking at the bottom part. Yeah. And what Officer Oki testified is that the document that's the document that is used when a person is physically deported from the United States. That's it. ER 117. That it indicates the date. He signed that the day before and 80 miles away. I know I'm repeating myself. Well, let me let me ask you a question. As I understand your colloquy with Judge Can I have her answer? You know, I thought she'd finish. Go ahead. I'm sorry, Your Honor. I thought I'd answer the question. I apologize. There is no dispute that the agent Harris was not the person and there's no and there's no dispute to our knowledge that this is the the only case that we know of where the order of deportation was not put in evidence. It's the only case I know of, Your Honor. I know that you know that, but you've been around long enough to How long have you been around? All right. Long enough to see several of these cases and the order is put in. Yeah. Okay. So let me see if I understand the colloquy that you just had with Judge Patterson. Is the government's position that the border patrol agents who apprehend and remove people all the time have the experience to be able to explain to the jury these are the procedures that we customarily follow when we remove illegal aliens from the United States. This is the form that is prepared that documents the fact that we have removed them. And this Exhibit 12 contains the signatures of two officers, one who photographs the alien and the other who fingerprints the alien. And the procedure is that the officer who removes the alien  at the border, confirms that this is the alien that we're asking to leave, and then watches him walk to the border. And that this form is relied upon by the agency to remove the five or six hundred people a day that we're removing from the Tucson sector back to Mexico. That's exactly right, Your Honor. So why do you introduce the order of removal as far as we know in all these other cases? The order of removal, in this case, the argument regarding the order of removal is about whether we needed to prove the order itself. I don't think the order typically is relied on to prove the fact of physical deportation, which is what Exhibit 12 and the testimony of officers Oki and Harris spoke to in this case. Well, isn't there a requirement in the order of removal that, what is, I read that to you a minute ago, that you've got to see him removed? I think there is certainly a requirement under 1326, and this Court has held so in Romo-Romo, that a defendant, that the government prove beyond a reasonable doubt that a defendant be physically removed. And in this case, Exhibit 12, along with the supporting testimony of officers, as Judge Tallman just summarized, was what the government relied on to prove that element. Well, is there a provision about observing the removal? Huh? You're speaking to the CFR, Your Honor? The testimony in this case was that that is what happens, and that in accordance with that procedure, that is what Exhibit 12 evidence is, that someone did watch the defendant cross the border and signed, after looking at his photograph, at the bottom of that form.  If the Court has no further questions, the government submits. Thank you, Your Honors. So, Ms. Chen, my question for you is, based on my summary of what I heard your opponent say, of all the evidence that the jury had, why is that not sufficient to permit a reasonable juror to conclude,   that your client was, in fact, removed from Nogales on 7th and 8th? Well, that's February 11th of 2010. So, with regard to the physical removal, my position is not that the evidence was insufficient. My position is that the evidence was inadmissible. The government argues that Government's Exhibit 12, the I-296, was the, quote, functionally equivalent of a warrant of removal. It may have been the functional equivalent in that the Border Patrol uses it like a warrant of removal, but it is not the legal equivalent. The I-205, which is the document that this Court has repeatedly held to be removable, is a document that is required by the CFR. It's required by 8 CFR 231.2, and that CFR sets out in quite a bit of detail the requirements of that. This document does not meet those requirements. But does it make a difference in deportations versus removals, that here we're dealing with expedited removals of literally hundreds of people per day from the Tucson sector alone. I attended a meeting of chief judges shortly before he was killed, and Chief Judge John Roll reported that the Tucson sector had apprehended 340,000 illegal aliens in the prior year. And as I understand what we're doing here, these are the procedures that the jury heard the Border Patrol has established for removing the vast number of people that do not go into the formal deportation system that ultimately results in the issuance of an I-205. I agree. I agree that if the jury properly saw Government's Exhibit 12, that is sufficient evidence for the jury to have concluded beyond a reasonable doubt that Mr. Lopez was removed. But my argument is not that. My argument is that this document was not admissible. And it was not admissible for two... The fact that it's difficult... Not admissible because it's not a public record and therefore doesn't meet the 8038 exception? Absolutely. All right,  because I don't see how this document is any different from the other public records that the Border Patrol keeps in order to record all of the aliens that they're handling. I mean, this document is not prepared for law enforcement purposes. It's prepared because the agency has the statutory duty of apprehending and returning to the countries from whence they came, people who have no right to come here. I understand that, Your Honor. And they could, as the immigration judges or Article III judges, to put everybody into deportation. The CFR requires that if someone is found to be inadmissible pursuant to an expedited removal and ordered removed, that they be removed pursuant to the requirements of 8 CFR 231, which includes the issuance of an admissible warrant of removal. So as a matter of law, they're required to do so. I guess where I'm losing you on the public records exception is if they have the requirement to do that and they have policies and procedures to verify that they carry out those duties, why isn't this record just as reliable and admissible as other public records to confirm the fact of removal? Because it doesn't meet the requirements of 8038. So 8038 says first it has to be observed pursuant to a duty of law. Okay. So first of all, this You don't think that the agents have a duty to observe the departure of the I-205. They were required to do that. In fact, there's no evidence that was in fact observed because the I-205 has two separate sections. One is if you actually observe the departure and one is if you verify the departure based on some other source of information. But didn't the agents testify that that's what the lower section of the I-205 does? And he doesn't do that. He's stationed at Tucson, which is not near the border. There was no evidence in the record that he had ever participated personally in a removal. Whether he had or not, I don't know. What we do know is that he was stationed at Tucson for six months as a special, I don't know, and that he did not, there was no evidence that he participated in a removal. So he really had no basis of knowledge to say what happened at the border. And in fact, that was the subject of the new trial motion that his testimony was different from what the folks at  said. So the I-205 is very different from the I-296. The I-205 gives one section for if you observed the removal and second if you verified it by some other means. And they have to specify the means. The I-296 just says did you verify it and that's it. So I think it's very different as a matter of evidentiary law. I'm not saying that the Border Patrol has an easy job. And I'm not saying that they can't use this procedure to deport people. What I'm saying is that when you come into a court of law in order to convict someone of a criminal offense,    to locate the person. The problem with this document is that nobody knows who signed it. Nobody knows who signed it. This isn't a matter of they weren't able to    I'm not saying that the agents routinely rely on these records and carry out their job. I don't believe there was such testimony. So with regard to the government's exhibit 12, I don't believe it was properly admitted. If it had been properly admitted, there would have been sufficient evidence of a physical removal. Now, the very fact that we're talking about government's exhibit 12 in relation to the physical removal shows us that it is not a document that speaks to the order of deportation. And it does have that heading. But no attention was drawn to that. In fact, it was not described in that manner at trial. It was described as a verification of removal. But it was admitted into evidence, right? So the jury could not have reasonably or legally inferred from the heading of a document that's about removal that the defendant had been ordered removed. It's two totally different things. And my recollection of the I-860 to go to one of Judge Ward Law's questions is that it was not signed. And so if it had been in evidence, the jury would have seen that it was not, in fact, signed. The government  that the reference to the term expedited removal was something that the jury would have considered to conclude beyond a reasonable doubt the defendant had been ordered removed. But the only evidence in the record of what an expedited removal was, was that you don't go before an immigration judge and there's no formal hearing. There was no evidence in the record as to what an expedited removal was. There was only evidence in the    removal was. And so you have to actually prove the elements of the offense. And the jury could not rationally or legally have concluded that the government proved an order of deportation when there was, in fact, no evidence in this case of an order of deportation. So can anybody read the name of the verifying officer? No. No one's been able to read it? No. No one's gone to Nogales and tried to figure out who this person could be? No, in fact, I believe the case agent, I mean, excuse me, the prosecutor said that would be impossible. We would need to go and take handwriting exemplars of thousands of employees and we couldn't do that. Can't they just get employees? And the last name, we know it begins with an M. There's no way to look at who was employed there at that time? They said that they did not attempt to do so. They said that that would be not practicable to do so and that they do not keep handwriting exemplars. In other words, this document really wasn't ever meant for anyone to actually be able to go and find these people. It was just, you know, someone gets to sign it. And that is not a way to find them. So if they could have figured them, it's the government, right? So I suppose they keep records of who was employed at this time. But they made no attempt to find these individuals. They said that that would be impracticable. Your bottom line is in this country we don't put people in prison for 48 months unless the evidence shows guilt beyond a reasonable doubt. And that didn't happen here because the evidence was not before the jury. Yes, Your Honor. It amounted to that. And, sure, thousands and thousands and hundreds of thousands of people are removed and, but everyone's a human being and if you're going to get someone and you've got to put them in prison, you better do it right. I couldn't say it any better. Or else DeVino will get you. Thank you both. That was very helpful.
judges: Pregerson, Wardlaw, Tallman